AIKEN vs. THE STATE OF GEORGIA.

[Jackson, C. J., not presiding, from providential cause.]

1. Where an indictment for larceny after trust followed the statute, and was so full and plain as to be fully understood by the defendant and the jury who tried the case, it was sufficient, and a demurrer thereto was properly overruled.

2. Where two justices preside in this court, and they differ in opinion as to whether the evidence sustains the verdict, the judgment will be affirmed.

Judgment affirmed.

September 16, 1884.

BLANDFORD Justice.

[Russell Aiken was indicted for larceny after trust. The body of the indictment alleged that defendant

"was intrusted by L. O. Jackson, as trustee for Sarah F. Burton, with one gray mare mule, about twelve years old, of the value of one hundred dollars, of the personal goods of the said L. O. Jackson, as trustee for Sarah F. Burton, for the purpose of using said mule with a view of purchasing, provided he, the said Russell Aiken, liked said mule, and the said contracting parties could mutually agree upon the terms of such a sale, and to keep the said mule for the use and benefit of the said L. O. Jackson, as trustee, as aforesaid, and he, the said Russell Aiken, did fraudulently convert and appropriate the said mule to his own use before any trade or sale of said mule was made, without the consent of the said L. O. Jackson, as trustee, as aforesaid, to the injury of the said L. O. Jackson, as trustee, as aforesaid, on demand made in person by the said L. O. Jackson, as trustee, as aforesaid, on the day and year aforesaid, in the county aforesaid, the full value of said mule, and without returning or delivering the said mule over to the possession of the said L. O. Jackson, as trustee, as aforesaid, which he, the said Russell Aiken, did absolutely refuse to do on demand made on the day and year aforesaid, in the county aforesaid, in person, by the said L. O. Jackson, as trustee, as aforesaid, on the said Russell Aiken, contrary to the laws of said state," etc.

The prosecutor, Jackson, thus detailed the transaction between him and defendant:

"In the month of February, 1878, he came to me to buy a mule; I showed him a gray mule, and told him my price was $100.00, payable

in the fall of the same year I told him. Well, there was a conversation took place; I don't know exactly what; the conversation, though, that is usually made or carried on in making a trade. He agreed to take the mule and try it, which he did, and he brought it back in a week or ten days; and when he brought the mule back, he said that $100.00 was too much, and said that he would give me $90.00. I told him I would not take $90.00 for it, and he then agreed to give me $100.00 for it, remarking, at the same time, it was a trade; and I told him no, it was not a trade, and I told him when he would give me a mortgage on his crop over three bales of cotton and the mule, that then I would consider it a trade, and that the mule would be mine until it was done; and he took the mule and went off under those conditions. . . . At the time he carried the mule off, the crop was not planted; and he told me in May, or about the first of June—I met him, and he was riding a small bay horse, and we stopped and exchanged some few words, and he asked me how I liked the horse—he told me he had traded the mule for the horse. . . . He traded the mule for the horse; he said that he suited him better, and that he had received about $15.00 worth of provisions to boot; and he asked me what I thought of the trade. I don't remember what answer I made to him. . . . I didn't make the demand on him at that time; I didn't know what to say; I didn't know what to think of the transaction, and I came to Bainbridge to consult an attorney about it. I didn't know what to do. He told me on that occasion that he had broken his land up with the mule and planted the crop with the horse. . . . I saw him several times between then and the 26th of November, 1878; in the same year, on the 26th of November, I went to see him, and he wasn't at home. I hunted him up, and I told him he had not made any settlement for the mule, and I repeated to him the conditions under which he got the mule; and he said that is true; and I told him he had made himself liable to a criminal prosecution, and that if he didn't make some satisfactory settlement about this mule, I would prosecute him; and he told me to crack my whip."

The jury found the defendant guilty. He moved for a new trial, on the following among other grounds:

(1.) Because the court overruled a demurrer to the indictment, on the grounds that it set out no offense; that it failed to show how, or in what manner the defendant appropriated the mule, which formed the subject of the alleged larceny, or how the prosecutor was injured, or that the parties failed to agree about the terms of the sale stated, and because the allegations are uncertain and conflicting.

(2.) Because the verdict was contrary to law and evidence, and without evidence to support it.

The motion was overruled, and defendant excepted.

In the Supreme Court, Justice Hall thought the evidence sufficient to sustain the allegations of the indictment, while Justice Blandford was not fully satisfied on the point; and the judgment was affirmed, as stated in the head-note.]